May it please the Court, I'm Roger Roots. I represent the appellant and the defendant in this case, Rudolph George Stanko. Mr. Stanko was on supervised release for a period of three years and his supervised release was revoked and he was sentenced to jail time for refusing to fill out an 80-question questionnaire that was given to him by his probation officer entitled PCRA, which stands for Post-Conviction Risk Assessment. And this questionnaire has 80 questions on it. A lot of it is sort of asking... And he's served it. Why is the case not moot? Well, it's not moot. It falls into that category of cases that will be repeated over and over in the federal system. This particular PCRA... Repeated over and over with who? My understanding is that virtually everyone on supervised release... But you're not representing everybody on supervised release. You're representing Mr. Stanko, right? Yeah. Mr. Stanko's case is over at this point. But remember, he will have long-lasting effects from this along with his conviction. Would a decision in his favor... How would it affect him? In other words, how has he been prejudiced by giving this provocation and seven days in jail? Well, his record contains this conviction for violating supervised release along with his other conviction. So it certainly would... It will be held against him in any future... Let's just say any possible future sentencing proceedings. And you see this kind of thing that will travel along with him. It is a record that his supervised release was revoked. It would contribute to increasing levels of detention and bail. These kinds of things in any future proceedings. Violation of probation or supervised release... Has that... Has those ramifications? I've seen it where they will hold for detention purposes. They will hold things against someone such as... Was in the hole or had disciplinary problems within jails or in prisons in previous periods of incarceration. They will actually hold that against someone. Are you familiar with a case called Spencer versus Kimna? Decided by the Supreme Court, rising out of this circuit. You know, there was some brief... There was a motion to dismiss for mootness and I believe I addressed... I forget, to be honest with you. But if I could just get into the facts a little bit. There's no question that this questionnaire contains questions that would... That ask and really compel an incriminating response. And there were some that probably didn't involve the First Amendment, right? Yeah, and it seems to me that the questionnaire builds. It starts with questions that are very innocuous. Change can be scary. Do you agree or not agree? There is nothing I can't do if I try hard enough. Agree or disagree. Of course, it starts out with questions like this. Of course, they're sprinkled through this document. But then you get to questions such as number 45. Quote, I have justified selling drugs, burglarizing homes, or robbing banks by telling myself that if I didn't do it, someone else would. How could anyone say that this is not asking a respondent to incriminate himself? And there are questions such as number 73. Number 73 says, I can see that my life would... I'm sorry. There have been times when I have felt entitled to break the law in order to pay for a vacation, a new car, or expensive clothing that I told myself I needed. Question 15 asks the respondent to state whether or not he agrees with the statement, I have helped out friends and family with money acquired illegally. Now, of course, all of us know the government can build a case against someone using entirely circumstantial evidence. But here they're asking for a direct confession by a respondent that could be used to build a case against him. And these other arguments that the government makes, such as they cite the blanket line. There's this blanket line. The person cannot just blankedly refuse to answer any questions. Of course, that line of cases, if you look at most of them, they involve someone who said things like, no, I'm not going to answer any questions about my finances. These are very specific questions on this PCRA. I mean, they're actually worded. They're saying, do you agree? Do you not agree? They aren't an example of someone who just says, no, I'm not answering any questions. Well, what is your problem with the alternative that Judge Battalion talked about? He said, well, why didn't you just file a motion? Why didn't you answer the ones you could and object to the others and so forth? Judge Battalion kind of laid out some options short of just refusing to answer anything. Well, the very first instruction at the top of the page says, please take the time to complete each of the 80 items on this inventory. So a person would be violating this very top instruction by singling out or crossing out or filing a motion. And by the way, I'm sort of in the facts of this case because I was his attorney. He called me when this came up, and I said, God, there are some self-incriminatory, incriminating questions on this. I thought this would trigger some negotiation of the kind that you're speaking of, a little bit of give and take. Maybe the probation office would say, OK, you don't have to answer numbers 15 or 73. But instead, they just initiate revocation proceedings. So think of how the case law is turning this Fifth Amendment right to remain silent into such a narrow thing. You actually have to state the words Fifth Amendment, which Stanko did. From the Murphy case, the Supreme Court said, well, you can't invoke your rights unless you specifically say the words Fifth Amendment. Stanko did that. Well, a convicted felon may give up some of his or her constitutional rights. And so Mr. Stanko, probably as much as anybody, very likely knows that. Well. I do. Well, I won't ask you what you. Mr. Stanko is, and by the way, the government's brief makes these arguments that he's a belligerent sort of a person on probation or on supervisory leave. And so as if that was held against him. In other words, as if as if standing on your rights repeatedly makes sort of waives your right ever to invoke the Fifth Amendment. He actually invoked the Ninth Amendment, the right to privacy and these other things. He invokes a wide variety of his constitutional rights. Note that there's not a single warning. Judge Battalion said, well, yeah, you can make a motion. There's not a single warning at the top that says that there's any immunity offered. And, of course, we know there is not immunity. We know there are cases in the. We're going to try the probation officer here now or the probation system. Is that is that where we're going with this? I mean, well, the suggestion that there's other remedies other than invoking your Fifth Amendment right not to fill this out. The suggestion that there are other remedies when it's not even mentioned at the top, there's no warning. To me, this is that question about bank robbery or you're to admit bank robberies. And yet there's nothing in here that would say you're immune from this. And, of course, we know that you're not immune. We know from other cases all over the place that probation officers will take answers to these kinds of questions and submit them to the U.S. Attorney's Office to initiate criminal proceedings. It's been done many times. And so there's no immunity. There's no instructions about how to proceed. If you suspect one of these is is going to incriminate you. And so this is very dangerous. And I see that I've tried to reserve two minutes for possible rebuttal. And I thank you very much for the opportunity. Thank you. Morning, Mr. Franklin. Good morning, Your Honors. May it please the court. I'm Frederick Franklin, Mr. Roots. And I just want to respond to some of the questions that were posed to Mr. Roots. First of all, by Judge Bean asking whether or not this case is, in fact, moved. And it's my suggestion to this court that it, in fact, was moved. The Spencer case basically stands for the proposition that collateral consequences from a finding of a violation don't extend to the same extent that a conviction would from a criminal case. And so that case also stands for the proposition that the burden of somehow showing any potential collateral consequences is on the person who would assert that the issue isn't moved. And in this case, it would be Mr. Stanko. Such a burden has not even attempted to have been met in this particular case, Your Honor. Judge Riley asked the question, why is it that Mr. Stanko didn't somehow specify which of the questions somehow infringed upon his rights under – his claimed rights under the Fifth Amendment? And I'm going to suggest to you that I think we all know the answer to why he didn't specify. This wasn't about any issue with respect to Mr. Stanko being concerned about incriminating himself. What this was about is Mr. Stanko being the kind of individual who has close to a 30-year history of being obstinate and obstructionist with respect to law enforcement or to any lawful authority. And the evidence of that is contained throughout the court filings within the Federal District of Nebraska, within the state system. It's contained in the memorandum in order that I attached as part of the addendum to my brief by Judge Cuff. And Judge Cuff specifically stated something that is really what the core of this case is all about. You want us to take judicial notice of these records? Is that your – Yes, Your Honor. Don't you have to make a motion for us to do that? Your Honor, I attached it to my – as an addendum to my brief. Okay. So I would – So you're so moving. I am so moving, Your Honor. I am so moving. But you didn't in the lower – you didn't make that motion in the judgment. Well, maybe there wasn't an opportunity. No. Well, Judge, it wasn't necessary for purposes of resolving the issue at the lower court. The issue at the lower court was whether or not Mr. Stanko had violated the terms of the supervised release. Now we have an appeal, and the issue is being presented to you as to whether or not Mr. Stanko is making a good-faith assertion of a violation of his Fifth Amendment rights. And I'm simply suggesting to you that the history that Mr. Stanko presents as referenced by Judge Kuff in his memorandum in order gives you some backdrop with which to evaluate whether or not this is a good-faith basis or a good-faith claim of a Fifth Amendment violation. Your Honor, the questions included whether he agreed, strongly agreed, disagreed, or was uncertain with things – with questions like, there is nothing I can't do if I try hard enough. Another question was, looking over my life, I can see how I lack direction and consistency. Well, I guess he's going to be put in jail if he answered that question, that he agreed or disagreed, or there's going to be a prosecution report directed to the U.S. Attorney's Office based on that kind of evidence. I mean, it's absurd is what it is. Well, his position apparently is that the First Amendment allows him to say what he wants to say or not say what he wants to say or not say anything, right? Your Honor, I would assume that that's what his position is. And my response to that is he is a convicted felon. And the probation office has an obligation to discharge a public duty, a public responsibility to supervise people that are on supervisory release. And one of the tools that they utilize to do that is this post-conviction risk assessment form. And it makes sense. The reason why they would want to use a form like that is to try to put together a rehabilitation or a supervised release plan that puts people in the best position so that they don't re-offend and so that they can mainstream themselves. But, Mr. Stanko. Well, I mean, in all fairness, when you read this questionnaire, there are a lot of questions that refer to history of drugs, alcohol, robbery. I mean, what do those questions have to do with Mr. Stanko and his history, even if his history is as you have described it? Well, Judge, that's a fair question. And I'm not, I guess, a social psychologist or the type of expert who would compile the questions that would go on a form like this. But my response from a legal standpoint is that what Mr. Stanko can do is to say this particular question doesn't have anything to do with me. This particular question doesn't have anything to do with my offense. He didn't do that. He took a blanket refusal to answer any of the questions. And again, looking at what the evidence is in the record from the probation officer that Mr. Stanko can't follow the rules, he refuses to follow the rules. This was the second violation of supervised release by Mr. Stanko. He'd gotten 13 months from a judge, a district court judge up in Montana, on this same supervised release and then comes back to Nebraska and has continued violations. And all of the violations, Judge, have to do with his refusal to go along with what lawful authority is in place with respect to his supervision. So the importance is that if he had objected to the fact that he had used drugs and there was a question about drugs on there and he thought that that might be the basis for him later being prosecuted, well, he could have said, I'm going to answer these questions, but I don't think it's, I need to invoke my right to the Fifth Amendment. And Judge Battalion most likely would have allowed him to invoke the Fifth Amendment in that circumstance. You can't do it, I would respectfully submit, with respect to the entire questionnaire. I'm just curious, is this questionnaire peculiar to the District of Nebraska or is it some kind of national questionnaire? Where does it come from? Your Honor, I believe, and I'm not positive on this, but I believe what's in the record is that this particular questionnaire is administered by all probation officers throughout the country to all individuals on supervised release. I equivocate because I don't remember if that's what the probation officer told me or if that's what's in the record. I will say that it certainly is my good faith understanding that it's the case that that questionnaire is administered to all individuals on supervised release. Throughout the country? Yes, sir. Yes, sir. You know, from… It's hard to believe this hasn't been challenged before. Your Honor, I did, I think I cited, I can't remember the name of the case. It's obvious that these questions, you know, people, defendants or whatever should be challenged in these, on the Fifth Amendment, some of these questions. And I can't imagine it hasn't come up. Your Honor, I think I did see one case, and I think I'm quite confident that I referenced it in my brief where there was a challenge to the PCRA and how it can be used in another case. I see I'm just about out of time. What I would suggest to you that if you're at all interested in going through a legal analysis, I would suggest to you the framework as it relates to Mr. Sanko's claim is to first of all determine if these questions somehow at all present the concrete situation where him providing answers will incriminate himself. And the reason why that's important is because if the questions don't call for incriminating information or responses, then there is no implication of the Fifth Amendment. And then the second question for you is really a question of whether or not Mr. Sanko's implication is really rooted in his concern about complications from answering those questions or whether he was simply seeking to be the kind of individual that Judge Cuff and I am suggesting he is in terms of being an individual who just refuses to go along with... I think your second question may be beyond our ability to do. I mean, we don't make fact findings like that. Well, Jan, if I could just... I see my time is up. There is the comment in the record from Mr. Sanko's probation officer that he was being violated because he simply thinks that the rules don't apply to him. And the only thing I'm simply suggesting to you is that his record in terms of court filings that's referenced in terms of what Judge Cuff has to say, it absolutely corroborates that statement by the probation officer. Thank you. Okay, thank you, Mr. Franklin. Hey, Mr. Roots has some time. One minute, John. Mr. Roots, do you know, if this is being administered all across the country, do you know of any criminal indictments or prosecutions in which a document like this has... a judge has admitted it in evidence? As a matter of fact, one of the cases I cite in my brief is a case where statements made to probation officers in generally not this particular form... Okay. ...have been used. And by the way, there are other kinds of things, especially with regard to the sexual offender treatment. These are very... Well, I suspect there are many admissions that are made to probation officers that could lead to prosecution, but I'm talking about just offering this form in evidence or being the subject of an indictment. I think this form is not that old. It may have been around six or seven years thus far. I'd like to just take a moment to rehabilitate Mr. Stanko's character at this point. Now, of course, he does file a lot of motions and he defends himself, but remember, in this case, he protested his innocence. It was a firearm possession case, and he had a legitimate claim or a very good faith claim of his innocence in this case. It went up to the Eighth Circuit. It was a split decision, two to one against him. It went up to a rehearing en banc. There were judges on this circuit who agreed with him that he is innocent in this case. So I just take issue with this idea that he's some kind of belligerent person. Well, he has some other criminal convictions that are... He does have some from 20 years earlier. ...that are well-established. I mean, he is a convicted felon, even if you disregard this particular case. He insists on his innocence in those prior cases. It was sort of a conspiracy meatpacking, some complicated prosecutions from the 1980s. But by the way, this questionnaire is filled with these things that make the person state that he's a criminal, and Mr. Stanko denies that completely. So probably a quarter of these questions say, yeah, I've lived this criminal life, and I've done so because of this. Well, it makes the person almost as a basis for a formulated answer to concede that he's lived a criminal life. Mr. Stanko confesses his innocence and protests his innocence to this date. So it just makes him make incriminatory remarks, and they don't reply to him because, remember, he insists on his innocence to this date. And it was a split decision by this court. So I thank you very much, and I thank Mr. Franklin as well. Thank you. Okay, we will take it under advisement and get back to you when we get the opportunity. Thank you very much. Thank you.